ELI LOGAN, JOSEPH C. GILPIN, Ex'r. of WILLIAM CHANDLER, dec'd., LEVI HAYES, JAMES SMITH, ISAAC JEFFERIS and the LANCASTER COUNTY BANK,

*vs.*

JOHN R. BRICK, EDMUND BRICK, JOHN B. MYERS and SARAH ROGERS.

*Kent, March T.* 1859

A voluntary conveyance, though without a fraudulent intent, is void, as against creditors, under the statute of 13 Elizabeth.

Such a conveyance is void *if it tend to hinder and delay creditors,* though it may not otherwise injure them.

The answers of the grantor and grantee in a voluntary conveyance, denying a fraudulent intent, though responsive to the bill, is no defence, since such conveyance is, as against creditors, a fraud in law, irrespective of the intent of the parties.

A conveyance being held fraudulent and void as against creditors, certain mortgages of the property conveyed, taken by the vendor by way of consideration, were nevertheless held good in the hands of an assignee for value without notice.

The answer of the assignee, denying knowledge of fraud in the securities

assigned to him and alleging himself to be a *bona fide* purchaser, for value, being responsive to the bill, is conclusive, unless rebutted by two witnesses or by one witness with corroborating circumstances.

The assignee, in such case, having a collateral security for the money advanced upon the mortgages, was required, for the benefit of junior creditors against the mortgaged property, first to exhaust his remedy upon the collateral security.

A creditor having the security of two funds out of which he can satisfy his debt, upon one of which only another creditor has a junior lien, will be compelled in equity to resort first to the fund which the junior creditor cannot reach.

BILL BY CREDITORS TO SET ASIDE A CONVEYANCE.—This bill was filed by the complainants, judgment creditors of John R. Brick, one of the defendants, to set aside a deed from himself and wife, dated July 1st, 1851, conveying to his son, Edmund Brick, a large tract of land in Kent county, known as Bombay Hook Island, on the ground that the conveyance was voluntary, without consideration and in fraud of creditors.

The bill alleged that the grantor was, at the time of the conveyance, in failing circumstances; that the grantee was insolvent; that nothing was paid as the consideration for the conveyance, and that no security was given except four mortgages on certain parts of the lands conveyed, of $3816 each, which was said to be over and above certain mortgage liens existing against portions of the property, to wit: one to the assignee of Samuel Harrison Smith for $5000; one to Charles S. Coxe for $900; one to Rachel Rogers, assignee of William Pearson, for $750; one to William Chandler, assignee of William Pearson, for $2000, and another to Edmund Brick, assigned to Rachel Rogers, as trustee for Joseph Reeves, for $1233.34. A large portion of Bombay Hook Island was left uncovered either by the prior liens or the four new mortgages; the latter amounting to $15,264, and with the prior liens making up $25,000, the nominal consideration for the con-

veyance of the property. It was alleged that the several mortgages to Rachel Rogers, to Charles S. Coxe and to Edmund Brick had either been paid off or were fictitious and fraudulent. The bill further alleged that the four new mortgages given by Edmund Brick had been assigned by John R. Brick to John B. Myers on the 8th of August, 1851; that such assignment was without consideration and made in order to carry into effect the proposed fraud on Brick's creditors. *Prayer*, that the conveyance from John R. Brick to his son Edmund Brick, also the four mortgages of the son to the father, and the assignment of them to John B. Myers should be decreed to be void; that the defendant, Myers, should re-assign the mortgages to John R. Brick; that Edmund Brick should re-convey Bombay Hook Island to his father, and that he should satisfy his pretended liens upon it; that Rachel Rogers should satisfy the mortgages standing in her name; and that payment of the debts due the complainants should be decreed out of the lands.

The answer of the defendant, John R. Brick, admitted his indebtedness to the complainants; also the conveyance of Bombay Hook Island to his son, Edmund Brick, on the terms charged in the bill, and the assignment of the securities taken from his son to John B. Myers; but the answer denied that either he or his son were insolvent at the time of the conveyance or that there was any fraud; and it set up, as the consideration for the conveyance, the prior mortgages existing against the property and the mortgages of the son for the balance of the purchase money—which, the answer alleged, were both taken and assigned in good faith; that the assignment was made, in addition to a mortgage of certain property in Philadelphia, for a loan of $24,000, made to John R. Brick by Myers, Claghorn & Co., which was afterward increased to $29,644, and which was duly applied to the payment of Brick's debts. The answer specially accounted for the mortgage liens of Rachel Rogers and Edmund Brick and alleged *bona fide* considerations for them.

The answer of Edmund Brick denied that, at the time of the conveyance, either he or his father were insolvent or contemplated insolvency; and also denied the charge of fraud, either in the conveyance or in the assignment of the mortgages for the purchase money.

The answer of John B. Myers denied all knowledge whatever of any fraud in the mortgages assigned to him, alleging that although John R. Brick might, in fact, have been in failing circumstances, it was not then publicly known or suspected; that he took the securities in good faith and without suspicion, for cash loans made in the usual course of business.

Rachel Rogers, the other defendant, denied the charge of payment or fraud in relation to the mortgages held in her name, and set forth the consideration for them.

Issues were joined and a large body of evidence taken on both sides, chiefly bearing on the question of the insolvency of the two Bricks and their transactions. The material points of the testimony are stated in the opinion of the Chancellor.

The cause came before the Chancellor, at the March Term, 1859, for a hearing on the bill, answers, exhibits and depositions.

*J. P. Comegys* and *Joseph J. Lewis*, (of Penna.) for the complainants.

This case, when properly stated, is more than half argued. An insolvent father conveys to his insolvent son a large landed estate, known as Bombay Hook Island, in Kent county, worth $95,900, for an alleged consideration of $25,000. He receives no money, but takes his son's bonds, payable at dates running from three to six years—with mortgages on part only of the Island, for $15,264, that

being the excess of the alleged consideration above cer-
tain encumbrances on the property, amounting to $9,736.
Edmund Brick, the grantee, did not covenant to pay the
encumbrances; and his mortgage for the purchase money
covered only part of the property conveyed to him, that
is, seven out of the twelve tracts into which the whole body
of the estate was divided.  The five tracts not covered by
the mortgage were encumbered only to the amount of
$2,000, a sum very much less than their value; so that
these tracts were, in effect, given to the son, without a
dollar of purchase money.  This was in July, 1851.  Three
months later, John R. Brick conveys to his son other pro-
perty, in Philadelphia, subject to encumbrances against it,
but, as before, without the payment of a dollar for it.
Following these conveyances John R. Brick raises money
by the sale to Myers of the mortgages taken for the pur-
chase money; and thus, by the magic of a few paper
writings, the son, without paying a dollar, takes the estate;
the father pockets the money raised on the securities; and
his creditors are expected to be kept at bay.  Can this be
done?  We answer,

1. The deed was a voluntary conveyance and is void,
as against creditors, under the statute of 13 Elizabeth.
Whether there was *in fact* a fraudulent intent is not mate-
rial.  The conveyance, if voluntary, is a *legal* fraud upon
the rights of creditors, and as such is within the statute.
*Reade vs. Livingston*, 3 *Johns. Ch. R.* 500, 501; 1 *Sto. Eq.
Jur.* secs. 355, 359, 360, *and note.*

Is then the deed voluntary?  The pre-existing encum-
brances, which in part made up the alleged consideration
of $25,000, Edmund Brick, the grantee, assumed no obli-
gation to pay.  The grantor, and any other property he
might have, remained bound.  This continuing liability
of the grantor makes the deed, to this extent, voluntary
within the statute.  *U. S. vs. Mertz*, 2 *Watts R.* 406.  The

mortgages for $15,264 (the excess of the $25,000 over the encumbrances) covered only seven out of the twelve tracts which made up the property conveyed.   The remaining five tracts were wholly without consideration; and the conveyance of these is rendered none the less void by the device of including all the tracts in one deed and alleging a fictitious consideration for the whole.   On the contrary, the deed being fraudulent as to the five tracts is void altogether.   The vice which taints it in part deprives it of all virtue, as against the creditors.   *Whitting vs. Johnson,* 11 *S. & R.* 328; *Burke vs. Murphey, Miss. R.* 157; *Holland vs. Cruft,* 20 *Pick. R.* 321.

The defendants rely upon the general denial of fraud in the answers; but the denial goes only to the *motives of the parties,* and not to the facts which make the transaction *legally* fraudulent.   The answers, therefore, are inconclusive on the question of fraud.   What was the actual intent of the parties it is not material to inquire; but, if it were so, we insist that such a transaction could have been with no other purpose than to hinder or defeat creditors,which is fraud under the statute.

2. Another ground for avoiding the conveyance is that even if its effect be not ultimately to *defeat* creditors its tendency is to *hinder and delay* them.   The bonds and mortgages for the purchase money were made payable at periods from three to six years, the first falling due in July, 1854; and thereby, supposing the bonds and mortgages to stand in place of the lands, all remedy on the part of the creditors was postponed.   If, by such a contrivance creditors can be postponed for three years, why not for thirty?   Such a wrong is within the contemplation of the statute. *Kepner vs. Buckhart,* 5 *Penn. State Rep.* 478; *Ashmead vs. Hean,* 1 *Harris R.* 584; 8 *Johns. R.* 451; 7 *Barr R.* 264; 16 *Penn. State Rep.* 488.

There remains another inquiry.   The conveyance being

void for fraud as between the Bricks, how is Myers, the assignee of the mortgages for the purchase money, affected? He was not a *bona fide* purchaser, for value and without notice. He must have known of the insolvency of the two Bricks; that the mortgages were given for the whole of the purchase money; that they were upon long credits, and that there were other creditors to be affected by these transactions. At least, there were strong grounds of suspicion on the face of the transaction, sufficient to put him upon inquiry and to affect him with notice. *Johnson vs. Harvey,* 2 *Penrose & Watts,* 82.

But, supposing the assignment to Myers not to be vitiated by fraud, we then claim that as Myers holds a mortgage on property in Philadelphia for the same debt secured by the assignment of the mortgages on Bombay Hook Island, equity will oblige him to resort to the Philadelphia security first. This is the general rule of equity, where one creditor has securities upon two funds and another creditor a security upon one only. The creditor having cumulative securities shall so use them as not to prejudice the other having only the one. But, in this case, the rule is enforced by the additional equity arising out of the fact that the property covered by the mortgage in Philadelphia was bought by Edmund Brick expressly subject to the mortgage for Myers' claim, and with Brick's undertaking to pay it, so that to collect the debt under the Bombay Hook Island mortgages would be a fraud upon the other creditors.

*G. P. Fisher* and *C. S. Layton,* for the defendants, John R. Brick and Edmund R. Brick.

Fraud is not to be presumed, especially to set aside solemn conveyances. 1 *Mad. Ch. Pr.* 261. The *onus* of proof is always upon the party charging it; and, in the present case, the *onus* is greatly increased by the denial of the

answer. The bill charges fraud generally; the answer denies it as it is charged, and is, therefore, sufficiently responsive to require two witnesses, or one with corroborating circumstances, to countervail it. 3 *Md. Rep.* 212; 7 *ib.* 537. Against this answer there is at most but suspicion, arising out of the relations and circumstances of the parties; but that is not sufficient. Even pregnant circumstances cannot make out a case of fraud against such an answer. 3 *Md. Rep.* 212; 3 *Md. Ch. Dec.* 29. John R. Brick has not been shown to be insolvent on the 1st of July 1851, the date of the deed. On the contrary, he was in full business credit, of which it is sufficient proof that a large portion of the claims of these complainants were contracted after the date of the conveyance. But, at all events, the conveyance was made for a valuable consideration, which was paid, *i. e.* by the purchaser taking subject to the prior liens, in part of the purchase money, and giving new securities for the balance, out of which securities the cash was raised. Actual payment of money is not necessary to validate a conveyance. A bond or mortgage is payment, if so made *bona fide.* 8 *Cow. R.* 430; 4 *Wend. R.* 306. The good faith of the transaction is demonstrated by the fact that the money raised on the securities was applied to John R. Brick's debts. Further, to avoid the conveyance, the purchaser must have been privy to the fraud, and there is no evidence against Edmund Brick. 2 *Mad Ch. R.* 556, 558; 1 *Mer. R.* 436; 5 *Conn. R.* 140; 4 *Kent's Com.* 464; 18 *John. R.* 514.

With respect to the argument that the conveyance, even if it did not defeat, at least tended to hinder and delay creditors, and so was obnoxious to the Statute of Elizabeth—the answer is that it had no such effect. The property sold for a better price on the credit given; and the money was realized at a small discount and applied to the debts. 5 *Penn. State Rep.* 478; 16 *Ib.* 492.

*E. Ridgely* and *N. B. Smithers*, for the defendant, Myers, relied on his answer as conclusive, in the absence of evidence to the contrary, that he took the securities without notice of any defect and for value paid. They also objected that the complainants could not put this defendant to exhaust his remedy against the property in Philadelphia before resorting to the assigned securities; that the complainants had their remedy by paying Myers' claim and taking an assignment. The general rule which compels a creditor having the security of two funds to resort to that fund which a junior creditor cannot reach, is subject to exceptions, and will not be enforced to the injury or prejudice of the creditor having the prior right to the two funds. *Evertson vs. Booth,* 19 *Johns. R.* 492. In this case the property in Philadelphia is heavily encumbered by liens prior to Myers' mortgage, and is not sufficient to cover it.

HARRINGTON, CHANCELLOR.—Part of the relief sought by this bill is that the mortgages held by Rachel Rogers against the property in controversy prior to the conveyance of it by John R. Brick to his son, may be set aside, on the ground of fraud in those mortgages. But Rachel Rogers by her answer positively denies the alleged fraud, setting forth the consideration of the mortgages, and the answer is supported by evidence. The creation of both of these mortgage liens on Bombay Hook Island was long prior, in point of time, to the conveyance of that property to Edmund Brick, the Pearson mortgage having been executed in January, 1848, and assigned in October, 1850, and the mortgage held in trust for Reeves made in 1849. They have no connection with the principal transaction which forms the subject of investigation in this case, and I have no hesitation in deciding that there is nothing established with reference to them, or to either of the mortgage securities executed prior to the convey-

ance of this property to Edmund Brick, to impeach their validity or impair their lien to the amount which remains due upon them respectively, which amount is not, however, at least in the Coxe mortgage, the full amount for which it was given. I decide nothing as to what is due on these mortgages, but will simply dismiss the complainant's bill so far as relates to them and decree that they are valid securities.

But, with regard to the conveyance of July 1st, 1851, from John R. Brick and wife to his son Edmund Brick, I am of opinion that it was made under circumstances and for a consideration that will not sustain it in a court of equity as against creditors. And this, not because of any incompetency in a father to convey to his son, nor on the ground of actual, moral fraud, done or contemplated; but because it was a voluntary conveyance, made by a person in failing circumstances, being largely indebted to the complainants and others, and without any other consideration than the security furnished by a part of the property itself, upon time, which would delay, if not otherwise injure, these creditors. Such a conveyance is void by the Statute of 13 Elizabeth, even without actual fraud contemplated, though if made by a person on the eve of insolvency it is evidence of intended fraud. It puts the property out of their power, as a resort for the payment of existing debts, which a debtor has not a right to do, unless by a sale *bona fide* and for a valuable consideration. A father may advance his son by a conveyance of his land, even without other consideration than the relation between them, which is a good, though it is not a valuable, consideration; but he must do so with due respect to the rights of others, and if these be injured the conveyance is void as to them. If the grantor be indebted at the time, or is about to become indebted, and act with a view to protect his property from such debt—much more if he be on

the verge of insolvency—he cannot, by a conveyance to his son, deprive his creditors of their right to proceed against his property. The insertion of a nominal consideration, however adequate, secured only by new liens on the land and postponing the payment of the debts, does not change the character of the transaction. It is essentially a voluntary conveyance, affecting the rights of creditors, and is void as to them; and, being avoided, it leaves the property liable to the grantor's debts, as if it had not been made.

It was argued, indeed, by the solicitor for John R. Brick, that his answer denying the fraud, being responsive in this respect to the bill, was conclusive, unless rebutted in the usual mode of outweighing such denial; that the gist of the matter was the intent with which the conveyance was made, and that unless fraud was intended it could not exist. The answer to this is that, without any proof of intention, the fraud which vitiates this transaction attaches to the conveyance itself, as one which operates *in fact* to the injury of creditors, and is, therefore, prohibited by the statute of 13 Elizabeth as legally fraudulent. I might, therefore, decide the case on this principle; but there is more in it to make this conveyance obnoxious in a court of equity. The case is thus far made out by the bill and answers, which do not set up any other consideration, and which admit the indebtedness though not the insolvency of John R. Brick at the time. The answers deny that there was any fraud in the conveyance, either actual or purposed; but the transaction itself contravenes the just rights of creditors, at least to the extent of hindrance and delay, which makes it legally fraudulent and void. And, on the proof, it appears that John R. Brick was largely indebted at the time and rapidly approaching a state of insolvency, which he reached in a few months, and that both father and son were involved in the same calamity.

Besides the very large indebtedness existing by bond and mortgage, it is in proof that John R. Brick was engaged in business transactions with Elijah Pugh, with Pugh and Brick, Bowers Lowber and others, in the course of which he was throwing out his negotiable paper almost without limit and on a foundation that threatened insolvency. His notes, checks and drafts, placed in the hands of Elijah Pugh to raise money, exceed $23,400, in the two months immediately preceding this conveyance; and those maturing in May, June, July, August and September, just before and after it, amounts to near $40,000. There can be no doubt that on the 1st of July, 1851, John R. Brick was largely indebted, and that his liabilities were increasing by his own act, so that he was rapidly approaching insolvency; and he did become insolvent shortly after. At this juncture he made a conveyance to his son of all his land in Delaware, for the nominal consideration of $25,000, and took mortgages on a part of it for $15,000, leaving it subject to the payment of prior liens created by himself. These mortgages he turned into cash by assignment to John B. Myers.

It is true, that he alleges in his answer that the money so raised was applied to the payment of his debts; but there is no proof on this subject, and the objection goes beyond this to the conveyance itself, which is legally void as being in fraud of creditors.

We next inquire whether John B. Myers is affected by this fraud, so as to be deprived of the benefit of the securities assigned to him? The bill charges him with complicity in the fraud; with being a mere trustee of John R. Brick and an agent with Edmund Brick to carry out the object of John R. Brick in putting his property beyond the reach of his creditors; or, failing proof of this complicity, the argument insists that John B. Myers had such knowledge, or means of knowledge, as he was bound to

avail himself of before advancing money on these securities and thus making them available as the means of carrying out a conveyance fraudulent in law against creditors.

The answer of John B. Myers denies this knowledge and asserts that though John R. Brick might have really been in the failing condition established by the proof in the case, this was not publicly known at the time, and that the advances made to him were *bona fide,* upon unsuspected securities, in the usual course of cash loans actually advanced. I am of opinion that there is nothing in the proof in this cause to discredit the answer, and I cannot equitably relieve the complainants against these securities, which were taken for a valuable consideration and without notice of the objection to which the original conveyance between John R..Brick and Edmund Brick was liable. But these securities were taken by John B. Myers as cumulative, and in addition to mortgages which he already held on Philadelphia property as security for advances to Brick; so that, in fact, by understanding of the parties as well as by the rules of equity, he ought first to resort to the Philadelphia property for payment, and, failing that, to enforce these mortgages against Bombay Hook Island for what may remain unsatisfied. The rule is that when a party has two funds out of which he can satisfy his debt, and another creditor has a lien posterior in point of time on one of the funds only, the first creditor will in equity be compelled to resort to that fund which the junior creditor cannot touch, in order that the junior creditor may avail himself of his only security, when it can be done without injustice or injury to the debtor or creditor. 19 *Johns. Rep.* 492.

Let a decree be entered in accordance with the prayer of the bill, declaring void the conveyance, made July 1st, 1851, from John R. Brick and wife to Edmund Brick for Bombay Hook Island; also declaring void the four mort-

gages executed by Edmund Brick to John R. Brick in consideration of said conveyance, saving the same as liens in the hands of John B. Myers, who is an assignee *bona fide*, for a valuable consideration and without notice, to the extent of his advances on the security of these and the other mortgages, amounting to $28,664.00; these mortgages to stand good to him only for what he may fail to realize out of the prior security taken for such advances on the Philadelphia property in Philadelphia; the bill to be dismissed as to the Pearson mortgage for $750,00 assigned to Rachel Rogers, and the Edmund Brick mortgage for $1233.34, which she holds in trust for Joseph Reeves; the costs to be paid by the defendants, John R. Brick and Edmund Brick.